Gerald L. Maatman, Jr. (IL 6181016) *(pro hac vice)*
Jennifer A. Riley (IL 6272366) *(pro hac vice)*
**DUANE MORRIS LLP**
190 S. LaSalle Street, Suite 3700
Chicago, Illinois 60603
Tel: (312) 499-6700
Fax: (312) 279-6780
E-mail:  gmaatman@duanemorris.com
         jariley@duanemorris.com

Shireen Y. Wetmore (SBN 278501)
Lauren M. Case (SBN 280629)
**DUANE MORRIS LLP**
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Tel: (415) 957 3000
Fax: (415) 957 3001
E-mail:   sywetmore@duanemorris.com
          lmcase@duanemorris.com

Angelica A. Zabanal (SBN 303329)
**DUANE MORRIS LLP**
865 South Figueroa Street, Suite 3100
Los Angeles, CA 90017
Tel: (213) 689-7400
Fax: (213) 689-7401
E-mail:  aazabanal@duanemorris.com

Attorneys for Defendant,
ATC HEALTHCARE SERVICES, LLC,
a Georgia limited liability company

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

DM2\17853557.14

DEFENDANT ATC HEALTHCARE SERVICES, LLC'S RESPONSE IN OPPOSITION TO
MOTION FOR ORDER REMANDING ACTION TO STATE COURT

1

TURESA WILCOX, an individual and
on behalf of all others similarly situated,

2

Plaintiff,

3

v.

4

HARBOR UCLA MEDICAL CENTER
GUILD, INC., a California nonprofit
corporation; ATC HEALTHCARE
SERVICES, LLC, a Georgia limited
liability company; and DOES 1 through
100, inclusive,

5

6

7

Defendants.

8

9

Case No. 2:23-cv-02802

**DEFENDANT ATC HEALTHCARE
SERVICES, LLC'S RESPONSE IN
OPPOSITION TO MOTION FOR
ORDER REMANDING ACTION TO
STATE COURT**

Date:   July 10, 2023[1]
Time:  9:00 a.m.
Judge: Mark C. Scarsi
Courtroom: 7C

[Removed from Los Angeles Superior
Court, Case No. 23STCV04472]

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[1] The parties have requested by stipulation (ECF 16) that the hearing be re-
noticed from June 26, 2023 to July 10, 2023.

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................1

II.   PROCEDURAL BACKGROUND ......................................................2

    A.    Plaintiff's Complaint. ...............................................................2

    B.    ATC's Notice of Removal. ......................................................4

III.  ARGUMENT......................................................................................5

    A.    Removal Is Proper Under CAFA. ............................................5

         1.    Given Plaintiff's Allegations and Employment History, ATC's Amount in Controversy Assumptions Are Reasonable. ....................................................................6

             a.    ATC's Wage Statement Violation Assumptions..............9

             b.    ATC's Wages Due Upon Termination (Waiting Time Penalty) Assumptions. ...........................................12

         2.    Adjusted Calculations Result in an Amount in Controversy Over $5 Million.......................................13

         3.    ATC's Assignment of 25% Attorneys' Fees Is Reasonable. ..................................................................17

    B.    Plaintiff's Failure to Plead She Lacks an Adequate Remedy at Law Is Not Cause for Remand of the Entire Action. ..........................18

IV.  CONCLUSION ...........................................................................21

DEFENDANT ATC HEALTHCARE SERVICES, LLC'S RESPONSE IN OPPOSITION TO
MOTION FOR ORDER REMANDING ACTION TO STATE COURT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alvarez v. Off. Depot, Inc.,*
  No. CV 17–7220 PSG, 2017 WL 5952181 (C.D. Cal. Nov. 30, 2017) ............... 14

*Amuezcua v. CRST Expedited Inc.,*
  No. 4:22-CV-06501, 2023 WL 2002085 (N.D. Cal. Jan. 31, 2023) ............. 10, 12

*Arias v. Residence Inn by Marriott,*
  936 F.3d 920 (9th Cir. 2019) ......................................................................... 7

*Brown v. Janus of Santa Cruz,*
  No. 21-cv-00094, 2021 WL 3413349 (N.D. Cal. Aug. 5, 2021) ......................... 14

*Clevenger v. Welch Foods Inc.*,
  No. SACV2300127CJCJDEX, 2023 WL 2390630 (C.D. Cal. Mar. 7,
  2023) .................................................................................................... 20

*Coleman v. Estes Express Lines, Inc.,*
  730 F. Supp. 2d 1141 (C.D. Cal. 2010), *aff'd*, 631 F.3d 1010 (9th Cir.
  2011) .................................................................................................... 13

*Dart Cherokee Basin Operating Co. v. Owens,*
  574 U.S. 81 (2014).................................................................................. 5, 9

*Fritsch v. Swift Transp. Co. of Ariz., LLC,*
  899 F.3d 785 (9th Cir. 2018) ...................................................................... 17

*Gant v. ALDI, Inc.,*
  LA CV19-03109, 2020 WL 1329909 (C.D. Cal. March 20, 2020) ...................... 7

*Guthrie v. Transamerica Life Ins. Co.,*
  561 F. Supp. 3d 869 (N.D. Cal. 2021)............................................................ 20

*Ibarra v. Manheim Invs., Inc.,*
  775 F.3d 1193 (9th Cir. 2015) ................................................................... 5, 9

*Jauregui v. Roadrunner Transp. Servs., Inc.,*
  28 F.4th 989 (9th Cir. 2022) ............................................................... *Passim*

*Kim v. Walmart, Inc.,*
   No. 2:22-CV-08380-SB-PVC, 2023 WL 196919 (C.D. Cal. Jan. 13,
   2023) ................................................................................................................. 19

*Lee v. Am. Nat'l Ins. Co.,*
   260 F.3d 997 (9th Cir. 2001) ............................................................................ 19

*Lewis v. Verizon Commc'ns, Inc.,*
   627 F.3d 395 (9th Cir. 2010) .............................................................................. 5

*Lopez v. Cequel Commc'ns, LLC,*
   No. 20-cv-2242-TLN, 2021 WL 4476831 (E.D. Cal. Sept. 30, 2021)................ 20

*Mish v. TForce Freight, Inc.,*
   No. 21-CV-04094-EMC, 2021 WL 4592124 (N.D. Cal. Oct. 6, 2021)............... 21

*Naseri v. Greenfield World Trade, Inc.*
   No. SACV 21-01084-CJC, 2021 WL 3511040 (C.D. Cal. Aug. 10,
   2021) ................................................................................................................. 20

*Oda v. Gucci Am. Inc.*
   No. 2:14-CV-74682015, WL 93335 (C.D. Cal. Jan. 7, 2015) ............................. 7

*Ramirez v. HV Glob. Mgmt. Corp.*
   No. 21-CV-09955-BLF, 2022 WL 1210402 (N.D. Cal. Apr. 25, 2022). 8, 9, 11, 17

*Salonga v. Aegis Senior Communities, LLC*
   No. 22-CV-00525-LB, 2022 WL 1439914 (N.D. Cal. May 6, 2022)................... 12

*Schlesinger v. Councilman,*
   420 U.S. 738 (1975)............................................................................................ 20

*Slick v. CableCom, LLC,*
   No. 22-cv-3415-JSC, 2022 WL 4181003 (N.D. Cal. Sept. 12, 2022) ................ 20

*Sonner v. Premier Nutrition Corp.,*
   971 F.3d 834 (9th Cir. 2020) ............................................................................ 19

*Stearns v. Ticketmaster Corp.,*
   655 F.3d 1013 (9th Cir. 2011) .......................................................................... 19

*Travonne Hooks v. Dignity Health,*
   No. CV 22-7699-DSF, 2022 WL 17968833 (C.D. Cal. Dec. 27, 2022)............... 20

iii

*Treinish v. iFit Inc.,*
No. CV 22-4687-DMG (SKX), 2022 WL 5027083 (C.D. Cal. Oct. 3, 2022) ................................................................................................21

*Trigueros v. Stanford Fed. Credit Union,*
No. 21-cv-01079-BLF, 2021 WL 2649241 (N.D. Cal. June 28, 2021) ...............14

**Statutes**

28 U.S.C. § 1332(d) .......................................................................... *Passim*

28 U.S.C. § 1447 ..............................................................................19, 21

Cal. Lab. Code § 201 .........................................................................2, 12

Cal. Lab. Code § 202 .........................................................................2, 12

Cal. Lab. Code § 203 .........................................................................2, 11

Cal. Lab. Code § 204 .............................................................................2

Cal. Lab. Code § 226 .....................................................................2, 9, 10

Cal. Lab. Code § 226.7 ...........................................................................2

Cal. Lab. Code § 510 ..............................................................................2

Cal. Lab. Code § 512 ..............................................................................2

Cal. Lab. Code § 1197 ............................................................................2

Cal. Lab. Code § 2802 ............................................................................2

California Unfair Competition Law................................................... *Passim*

**Other Authorities**

Fed. R. Civ. P. 56(c)(4)...........................................................................9

Fed. R. Civ. P. 12(b)(6) .........................................................................20

DEFENDANT ATC HEALTHCARE SERVICES, LLC'S RESPONSE IN OPPOSITION TO
MOTION FOR ORDER REMANDING ACTION TO STATE COURT

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I.   **INTRODUCTION**

Defendant ATC Healthcare Services, LLC ("ATC") timely and properly removed Plaintiff Turesa Wilcox's ("Plaintiff") putative class action Complaint on the basis of CAFA jurisdiction.  Plaintiff seeks to remand this matter to state court arguing that the Court should narrowly construe her intentionally vague claims to avoid federal jurisdiction rather than read them reasonably to encompass the potentially tens of millions of dollars she has put in controversy.  Plaintiff's Motion to Remand is without merit and should be denied.

Plaintiff's argument that she intentionally may plead her claims in a way that avoids federal jurisdiction, while preventing ATC from making assumptions to calculate the amount in controversy, fails as a matter of law.  It is well settled that, where a Plaintiff fails to allege a particular dollar figure regarding the relief sought, a Defendant may make reasonable estimates of the alleged amount in controversy. Here, Plaintiff expressly alleges in her Complaint that her claims "are typical of those claims which could be alleged by *any* Class Members, and the relief sought is typical of the relief which *would be sought by each Class Member* in separate actions."  (ECF No. 1-1, Ex. A ¶ 28 (emphasis added).)  Thus, a *reasonable* reading of the Complaint permits the assumption that Plaintiff's alleged experience was "typical" of the broad class of individuals she seeks to represent.

ATC reasonably calculated the amount in controversy by extrapolating *Plaintiff's* average pay rate, which Plaintiff does not appear to dispute, and the frequency with which *Plaintiff* allegedly experienced a violation of the Labor Code. Although ATC maintains that neither Plaintiff nor any putative class member is entitled to any relief whatsoever, Plaintiff's allegations, along with her broad requests for relief and the declarations of ATC's Chief Information Officer, Scott Gultz, show that CAFA's amount in controversy is easily satisfied.  (ECF No. 1-1; Supplemental Declaration of Scott Gultz ("Gultz Supp. Decl.").)  Plaintiff cannot avoid CAFA

DM2\17853557.14

1

jurisdiction where her intentionally vague allegations put in controversy an amount several million dollars above the minimum threshold and where she fails to introduce any evidence to the contrary.  As a result, her Motion to Remand should be denied.

## II.    PROCEDURAL BACKGROUND

### A.    Plaintiff's Complaint.

On March 1, 2023, Plaintiff filed a Class Action Complaint in the Superior Court of the State of California, County of Los Angeles, entitled *Turesa Wilcox v. Harbor UCLA Medical Center Guild, Inc., et al.*, Case No. 23STCV0447 (the "Complaint").  (ECF No. 1-1. Ex. A.)  Plaintiff asserted nine causes of action against Defendants ATC and Harbor UCLA Medical Center Guild, Inc. ("Harbor") for alleged violations of the California Labor Code, Wage Orders, and the California Unfair Competition Law (the "UCL").  (*Id.* ¶¶ 32-95.)

ATC is a staffing company that provides hospital staffing services to healthcare companies in the United States.  Plaintiff alleges she was employed by "Defendants" as a non-exempt employee.  (ECF No. 1-1, Ex. A ¶¶ 2-3.)  Plaintiff does not allege her dates of employment but instead states that she was employed from "approximately June of 2022 through approximately June of 2022." (*Id.*)

In her Complaint, Plaintiff purports to bring the following claims on behalf of herself and putative class members:  (1) failure to pay overtime wages in violation of Cal. Lab. Code § 510; (2) failure to pay minimum wages in violation of Cal. Lab. Code § 1197; (3) meal break violations under Cal. Lab. Code §§ 226.7 and 512; (4) rest break violations under Cal. Lab. Code § 226.7 and "applicable Wage Orders"; (5) failure to pay all wages due upon termination under Cal. Lab. Code §§ 201-203; (6) wage statement violations under Cal. Lab. Code § 226; (7) failure to timely pay wages under Cal. Lab. Code § 204 and "applicable Wage Orders"; (8) failure to reimburse necessary business expenses in violation of Cal. Lab. Code § 2802; and (9) violation of the UCL.  (ECF No. 1-1, Ex. A ¶¶ 32-95.)  Plaintiff seeks recovery of unpaid wages, liquidated damages, missed meal and rest break premiums, wage statement

penalties, waiting time penalties, injunctive relief, restitution, pre- and post-judgment interest, and attorney's fees and costs.  (ECF No. 1-1, Ex. A, Prayer for Relief.)

Plaintiff seeks to pursue her claims on behalf of a putative class consisting of "all current and former non-exempt employees of Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class (collectively referred to as 'Class Members')."  (*Id.* ¶ 22.)

To summarize Plaintiff's allegations (using her Complaint, her Response to ATC's Motion to Dismiss, and ATC's time and pay records for Plaintiff), Plaintiff alleges:

- Plaintiff worked **less** than one month in 2022 (ECF No. 1-1, Ex. A ¶ 2);
- In that time, she worked over 8 hours, **and** over 40 hours in at least one workweek, **and** seven consecutive days (*id.* ¶ 12)[2];
- She suffered multiple instances of unlawful meal **and** rest periods, including missed, shortened, late, or interrupted (*id.* ¶¶ 14-15);
- Plaintiff incurred unreimbursed business expenses (*id.* ¶ 19);
- Plaintiff's pay was delayed (*id.* ¶ 18); and
- Plaintiff was not timely paid all wages due upon termination (*id.* ¶ 16).

Plaintiff does **not** allege:

- That she was ever later paid any of the alleged wages due;
- That she had any pay periods *without* a wage violation; or
- On which of her four days of work she claims a violation did or did not occur.

---

[2] Plaintiff's counsel reiterated these allegations during the April 25, 2023, meet and confer.  (ECF No. 13-1 ¶¶ 3-4.)  It defies logic that all of these violations occurred in just one of the two pay periods in which Plaintiff worked.  For example, in order for Plaintiff to have worked over 40 hours in one workweek, Plaintiff would have had to have worked off the clock at least 24 hours in a single pay period because she was never paid for more than 16 hours in a single pay period.

**B.   ATC's Notice of Removal.**

ATC timely removed this action to the United States District Court on April 14, 2023.  (ECF No. 1.)  Removal was based on this Court's subject-matter jurisdiction under CAFA because:  (1) the action involves 100 or more putative class members; (2) at least one class member is a citizen of a state different from that of at least one defendant; and (3) the amount in controversy exceeds $5,000,000, exclusive of interest and costs.  28 U.S.C. §§ 1332(d)(2), (5), (6).  In support of the Notice of Removal, ATC submitted the Declaration of Scott Gultz, ATC's Chief Information Officer.  (ECF No. 1-1.)  Based on his personal knowledge, Mr. Gultz provided the following information upon which ATC based its amount in controversy calculations:

- There were approximately 1,062 current and former hourly non-exempt employees who were employed by ATC in the State of California from March 1, 2019, to April 3, 2023.

- During this time period, these employees worked approximately 21,614 workweeks.

- From March 1, 2019, to April 3, 2023, 877 of these employees terminated their employment or resigned.

- Over the course of Plaintiff's employment with ATC, Plaintiff's average rate of pay was $24.45, and her average shift length was 7.31 hours.

- During the relevant time period, ATC paid these employees on a weekly basis.  Accordingly, each employee had up to 52 pay periods per year.

(*Id*. ¶¶ 8-11.)  Mr. Gultz has provided an additional, supplemental declaration in support of ATC's Response in Opposition to Plaintiff's Motion to Remand, providing additional information regarding Plaintiff's employment with ATC, including that Plaintiff worked a total of just four days in June 2022.  Specifically:

On June 16, 2022, Plaintiff worked 5.25 hours.

On June 17, 2022, Plaintiff worked 8 hours.

On June 21, 2022, Plaintiff worked 8 hours.

On June 22, 2022, Plaintiff worked 8 hours.

(Gultz Supp. Decl. ¶ 6.)

## III.  <u>ARGUMENT</u>

### A.  <u>Removal Is Proper Under CAFA.</u>

Despite ATC's showing that the amount in controversy is millions of dollars *above* the $5 million threshold required for CAFA jurisdiction, Plaintiff claims that ATC has not met its burden of demonstrating that it is more likely than not that the amount in controversy is over $5 million.  Plaintiff's challenges to ATC's reasonable calculations are without merit.  Plaintiff also challenges this Court's jurisdiction over one of Plaintiff's nine claims – her derivative UCL claim for which she seeks equitable relief.  ATC will address each of these arguments in turn.

As an initial matter, Congress enacted CAFA "specifically to permit a defendant to remove certain class or mass actions into federal court" and intended courts to interpret CAFA "expansively." *Jauregui v. Roadrunner Transp. Servs., Inc*., 28 F.4th 989, 992 (9th Cir. 2022) (citing *Ibarra v. Manheim Invs., Inc*., 775 F.3d 1193, 1197 (9th Cir. 2015)).  Although removal statutes are generally to be strictly construed against removal, "no anti-removal presumption attends cases invoking CAFA." *Id.* (citing *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014); *Gaus v. Miles, Inc*., 980 F.2d 564, 566 (9th Cir. 1992)).

The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc*., 627 F.3d 395, 400 (9th Cir. 2010).  To satisfy the amount in controversy under CAFA, ATC only needs to offer proof that establishes the amount in controversy by a *preponderance of the evidence. Jauregui,* 28 F.4th at 992.  "This burden is not daunting, as courts recognize that under this standard a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." *Id.*

As the Ninth Circuit explained in *Jauregui*, "a CAFA defendant's amount in controversy assumptions in support of removal will always be just that:  assumptions.

5

At that stage of the litigation, the defendant is being asked to use the plaintiff's complaint – much of which it presumably disagrees with – to estimate an amount in controversy.  This is also at a stage of the litigation before any of the disputes over key facts have been resolved."  *Jauregui*, 28 F.4th at 993.  When calculating the amount in controversy, therefore, "the parties need not predict the trier of fact's eventual award with one hundred percent accuracy."  *Id.* (citing *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004)).

As is inescapable at this early stage of the litigation, the removing party must be able to rely "on a chain of reasoning that includes assumptions to satisfy its burden to prove by a preponderance of the evidence that the amount in controversy exceeds $5 million," as long as the reasoning and underlying assumptions are *reasonable*.  *Id.* (citing *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015)).  When a plaintiff contests the amount in controversy allegation, "*both sides submit proof* and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied."  *Id.* (emphasis added).

Because Plaintiff has contested the amount in controversy, ATC submits additional admissible evidence upon which it bases its assumptions in concert with the allegations in the Complaint.  (*See generally* ECF No. 1-1; Gultz Suppl. Decl.)  Plaintiff, on the other hand, submitted no evidence, has not disputed that the amount in controversy is actually less than $5 million, or provided any proof that the amount in controversy is less than $5 million.  Instead, Plaintiff attacks ATC's calculations, proffers no alternative assumptions, and argues without support that ATC's calculations "must not be counted."  (ECF No. 14, 17:9-10.)  Plaintiff's efforts fail.

### 1.   Given Plaintiff's Allegations and Employment History, ATC's Amount in Controversy Assumptions Are Reasonable.

Plaintiff raises no dispute with ATC's amount in controversy calculations for: (1) overtime wages; (2) unpaid meal premiums, ranging from $528,413 to $2,642,065; and (3) unpaid rest period premiums, ranging from $528,413 to $2,642,065.  (ECF

No. 13 ¶¶ 37-38, 43-44.)  The latter two claims put the amount in controversy between $1,056,826 and $5,284,130 – meaning these two claims *alone* meet the $5 million minimum amount in controversy.

Plaintiff instead takes issue with ATC using a 100% violation rate to calculate her claims for:  (1) wage statement violations; and (2) waiting time penalties for failure to provide wages due at termination.  Plaintiff's argument is essentially the same for both claims, *i.e.*, that ATC cannot use a 100% violation rate based on workweeks (because Plaintiff has pleaded that ATC's violations were only "at times," rather than a "pattern and practice") or based on the total putative class (because the violations applied only to Plaintiff and Class Members "or some of them").  (ECF No. 14 at 11:3-6; 15:16-18.)  Plaintiff's intentional obfuscation of her pleadings, however, does not render ATC's assumptions unreasonable.

While Plaintiff could have pleaded with some certainty that violations occurred once per year, once per month, or once per week, she did not.  Instead, Plaintiff pleaded that violations occurred "at times" to "Plaintiff and Class Members, or some of them."  (*See, e.g.,* ECF No. 14, 9-10.)  Plaintiff's failure to set forth specific allegations as to the amount in controversy allows ATC to make reasonable assumptions.  *See, e.g.*, *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (holding that "Marriott's assumptions are plausible" where it assumed "30 minutes of unpaid overtime per week"); *Gant v. ALDI, Inc.*, LA CV19-03109, 2020 WL 1329909, at *5 (C.D. Cal. March 20, 2020) (violation rate of one hour of unpaid overtime per week found "reasonable in light of the Complaint, *whose allegations lack specificity.*") (emphasis added); *Oda v. Gucci Am. Inc.*, No. 2:14–CV–74682015, 2015 WL 93335 at *4 (C.D. Cal. Jan. 7, 2015) (finding reasonable an assumed violation rate of *one hour* of overtime per week where plaintiffs asserted the defendant "sometimes" failed to pay overtime).  ATC, in fact, made reasonable assumptions, and Plaintiff has not demonstrated otherwise.

As an initial matter, Plaintiff's assertions that ATC's supposed violations occurred only "at times" does not render an assumed 100% violation rate for her derivative wage statement and waiting time penalty claims unreasonable.  For example, for the two workweeks during which Plaintiff worked, there could have been a meal period violation only twice (*e.g.*, once on June 17, 2022, and once on June 21, 2022) and, yet, a 100% violation rate as to her wage statements claim (one for each of her two pay periods) and a 100% violation rate on her waiting time penalties claim (because she does not allege that any of these allegedly unpaid wages were later paid within the applicable 30-day period).  There is no basis in Plaintiff's Complaint to assume otherwise.  Indeed, the significant number of violations that Plaintiff alleges occurred during her two pay periods requires ATC to assume that supposed wage statement and waiting time violations occurred in 100% of her workweeks.

Further, Plaintiff alleges ATC had "*policies and practices*" resulting in a failure to provide accurate wage statements and timely pay wages, both in the Complaint (ECF No. 1-1, Ex. A ¶¶ 72, 81) and in her Response to ATC's Motion to Dismiss (ECF No. 15 at 7:19-22; 12:15-17, 25-26).)  A defendant may assume 100% violation rates where the "assumption is 'supported directly by, or reasonably inferred from, the allegations in the complaint.'"  *Ramirez v. HV Glob. Mgmt. Corp.*, No. 21-CV-09955-BLF, 2022 WL 1210402, at *4 (N.D. Cal. Apr. 25, 2022) (citation omitted).

Moreover, Plaintiff alleges her claims are typical of the class.  Specifically, Plaintiff alleges that "[t]he claims of Plaintiff herein alleged are typical of those claims which could be alleged by *any* Class Member, and the relief sought is typical of the relief which *would* be sought by *each* Class Member in separate actions." (ECF No. 1-1, Ex. A ¶ 28 (emphasis added).)  Plaintiff seeks to represent *all* current and former non-exempt employees of ATC "at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class."  (ECF No. 1-1, Ex. A ¶ 22.)

ATC, therefore, was entitled to make reasonable assumptions extrapolating Plaintiff's allegations, when measured against her time records, to that of the putative class members. Before extrapolating to the putative class, it is helpful to review Plaintiff's allegedly typical experience. Plaintiff alleges she worked in the month of June 2022. (ECF No. 1-1, Ex. A ¶ 2.) More specifically, ATC's payroll records show that Plaintiff worked on a total of four days, over two pay periods. (Gultz Supp. Decl. ¶ 6.)[3] In other words, Plaintiff alleges that "at times" over the course of these two pay periods, she was: (1) owed a premium of one hour of pay for multiple meal periods; (2) owed a premium of one hour of pay for multiple rest periods; (3) worked sufficient hours off the clock that she would have exceeded 40 hours in a workweek when her pay wage statements indicate she worked no more than two days per pay period; (4) incurred expenses that were presumably not reimbursed; and (5) was not paid any of the alleged wages owed such that it might reduce the her waiting time penalties. Crediting Plaintiff's allegation that such claims are "typical" of the putative class members, the amount in controversy is easily satisfied.

### a.  ATC's Wage Statement Violation Assumptions

Plaintiff's claim for penalties under Labor Code section 226 places **$1,596,150** at issue (attributing $50 to the first workweek and $100 to all subsequent workweeks

---

[3] Plaintiff argues that ATC has not proffered adequate evidence to support its conclusions. A defendant's notice of removal under CAFA, however, need include only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," and not evidentiary submissions. *Ibarra*, 775 F.3d at 1197 (quoting *Dart Cherokee*, 574 U.S. at 89). Evidentiary submissions are not required unless the plaintiff contests, or the court questions, the defendant's allegations. *Dart Cherokee*, 574 U.S. at 89. Both of Mr. Gultz's declarations are admissible evidence, based on personal knowledge, and stating facts that are admissible in accordance with Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge [and] set out facts that would be admissible in evidence."). A declaration submitted by a company employee attesting to a review of business records can constitute competent evidence supporting amount-in-controversy calculations. *Jauregui*, 28 F.4th at 992; *Ramirez*, 2022 WL 1210402, at *4 (holding declarant's statement sufficiently describing his methods for obtaining data that comprised defendant's calculations based on personal knowledge of payroll and employment databases admissible).

up to a maximum of $4,000 for the total number of employees (1,062) for the four-year period).  (ECF No. 14 ¶¶ 49-52.)

In calculating this amount in controversy, ATC reasonably assumed one violation per pay period.  (ECF No. 14 ¶ 52.)  This assumption is based on the language of Plaintiff's Complaint and information known about Plaintiff's employment with ATC.

First, in the Complaint, Plaintiff alleges "Defendants failed to comply with Labor Code section 226, subdivision (a) by adopting *policies and practices* that resulted in failure, at times, to furnish Plaintiff and Class Members with accurate itemized statements."  (ECF No. 1-1, Ex. A ¶ 72.)  Moreover, in her Response to ATC's Motion to Dismiss, Plaintiff alleges that "she and other putative class members were subject to a system . . . that required they perform acts without compensation." (ECF No. 15 at 7:19-22; 12:15-17, 25-26.)  Where such uniform allegations are made, it "is not unreasonable to assume that a 'policy' that plaintiff alleges was enforced most of the time."  *Amuezcua v. CRST Expedited Inc.*, 2023 WL 2002085, Case No. 4:22-CV-06501, at *5 (N.D. Cal. Jan. 31, 2023).

Second, Plaintiff worked for ATC for a total of four days, over the course of two pay periods.  (Gultz Supp. Decl. ¶ 6.)  She does **not** allege that any of the violations occurred in only one of those two pay periods, let alone that all of the violations occurred in one or the other of the pay periods at issue, nor can she. Plaintiff worked only two pay periods with her first day of work in the middle of a pay period (June 16, 2022).  If, as alleged, she worked seven consecutive days, she would have worked multiple days in each pay period without pay.  (*Compare* ECF 1-1, Ex. A, ¶ 12 *with* Gultz Supp. Decl. ¶ 6, Ex. A.)  There is no information in Plaintiff's Complaint upon which that it would be reasonable to assume that a violation *did not* occur during each of the two weeks she worked and, likely, on each of the four days for which she was compensated.  Otherwise, her allegations regarding overtime would not make any sense.

Plaintiff's reference to the "system" to which she and putative class members allegedly were subjected further supports the assumption that at least one alleged violation of the Labor Code occurred in each pay period.  (*See* ECF No. 15, 7:19-22.)  In calculating the amount in controversy, ATC assumed a rate of 30 minutes of unpaid overtime due per workweek, with which Plaintiff does not appear to quarrel, yet, the overtime claim alone would substantiate the basis for ATC's calculations as to Plaintiff's derivative claim of inaccurate wage statements.  As demonstrated by the cases cited above, ATC was well within reason to assume one hour or more of overtime per workweek, but even ten minutes per workweek could give rise to a potential claim of an inaccurate wage statement.  As a result, ATC's assumption of a 100% violation rate is appropriate.

Plaintiff's claim that only "some" of the population at issue suffered certain violations and that the "plain language shows Plaintiff does not even allege every putative class member suffered *a violation* of [the] labor code" does not comport with the allegations in her Complaint and cannot save her.  (*See* ECF No. 14, 5:21-23.)  If Plaintiff does not claim that *a violation* occurred for certain putative class members, then she does not have a good faith basis to bring or to maintain a class claim, and the remainder of the allegations in her Complaint, including the allegation that she is "typical" of each putative class member, run afoul of Rule 11.  Indeed, Plaintiff provides no facts to identify which individuals she now supposedly contends were not subject to the "system," "policies," or "practices" she alleges in support of her wage claims and, therefore, it is appropriate to assume for purposes of the amount in controversy analysis that each putative class member suffered a supposed violation. *See Ramirez v. HV Glob. Mgmt. Corp.*, No. 21-CV-09955-BLF, 2022 WL 1210402, at *4.

In sum, there is no basis to reduce the **$1,596,150** in controversy based on Plaintiff's claim for inaccurate wage statement penalties.

### b.    ATC's Wages Due Upon Termination (Waiting Time Penalty) Assumptions.

Plaintiff's claim for penalties under Labor Code section 203 for failure to pay wages earned prior to resignation or termination places at least **$4,702,373** ($24.45 hourly rate x 7.31 hours per day x 30 days x 877 employees) in controversy.

Although ATC denies such claim, in calculating this amount in controversy, ATC appropriately used a 100% violation rate.  This is a reasonable assumption.  First, Plaintiff alleges that ATC failed to pay her wages and does ***not*** allege that ATC ever paid her the disputed amounts.  Any such payments could have cut short the maximum 30-day penalty, but Plaintiff's Complaint reasonably suggests that ATC has not paid her the amounts she claims.  (*See, e.g.*, ECF No. 1-1, Ex. A ¶ 37.)  Second, Plaintiff alleges that ATC "intentionally adopted policies and practices incompatible with the requirements of Labor Code sections 201 and 202, resulting in the failure, at times, to pay all wages earned prior to termination or resignation."  (ECF No. 1-1, Ex. A ¶ 65.)  Such uniform allegations allow defendants to assume "that all employees who separated during the class period are owed 30 days of wages."  *Amuezcua*, 2023 WL 2002085, at *5.  The court in *Amuezcua* recognized that such an assumption was appropriate where the plaintiff alleged the defendant "had policies that led to regular violations of the labor code."  *Id*. at *6, n.8.

The "at times" language neither reduces the length of the penalty nor the number of individuals allegedly owed waiting time penalties.  Here, the "at times" language could be referring to the fact that these penalties apply only when there is a termination.  Plaintiff provides no clarity or facts to support the allegation other than to tie it her other claims as a derivative claim.  (ECF No. 14, 15:28-16:1.)

A 100% violation rate is appropriate "where the plaintiff has (1) tied waiting-time penalties to other claims and (2) the defendant specifically accounts for only terminated employees.  *Salonga v. Aegis Senior Communities, LLC*, No. 22-CV-

12

00525-LB, 2022 WL 1439914, at *4 (N.D. Cal. May 6, 2022) (citing *Trigueros v. Stanford Fed. Credit Union*, No. 21-cv-01079-BLF, 2021 WL 2649241, at *6 (N.D. Cal. June 28, 2021) ("Because Plaintiff has tied her waiting period claims to her other claims, and because Defendant specifically accounts for only terminated employees in its use of a 100% violation rate, the Court finds Defendant's estimate[ ] ... plausible and supported by a preponderance of the evidence."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.") (collecting cases), *aff'd*, 631 F.3d 1010 (9th Cir. 2011).

Plaintiff's arguments that she seeks "up to the maximum of thirty (30) days" worth of penalties, "but not the maximum" is nonsensical.  (ECF No. 14 at 16:18-21.)  She has tied her derivative waiting time penalty claims to her allegation that she was owed wages at termination and those wages are owing.  One such claim is her overtime claim, calculated for the purposed of removal, applied to each workweek.  Absent any argument to the contrary, ATC's assumption of **$4,702,373** in controversy is reasonable.

### 2. Adjusted Calculations Result in an Amount in Controversy Over $5 Million.

The assumption of a 100% violation rate is reasonable given Plaintiff's allegation that she is typical of each putative class member and her allegation that ATC has "policies and practices" resulting in wage statement violations and wages due upon termination penalties.  If, however, the Court disagrees with ATC's assumptions, and rejects the 100% violation rate for these two claims, it must look for a reasonable "alternative assumption" as a basis for recalculation. *Jauregui*, 28 F.4th at 994-96 (holding "the district court should consider the claim under the better assumption – not just zero-out the claim").

District courts in the Ninth Circuit have found violation rates ranging from 20%

1    to 60% appropriate depending on the unique facts of the case and the plaintiffs'

2    allegations.  *See, e.g., Alvarez v. Off. Depot, Inc.*, No. CV 17-7220 PSG, 2017 WL

3    5952181, at *3 (C.D. Cal. Nov. 30, 2017) (60% violation rate); *Brown v. Janus of*

4    *Santa Cruz*, No. 21-cv-00094, 2021 WL 3413349, at *6-7 (N.D. Cal. Aug. 5, 2021)

5    (25% violation rate); *Trigueros v. Stanford Fed. Credit Union*, 2021 WL 2649241, at

6    *4 (N.D. Cal. Jun. 28, 2021) (20% violation rate).

7             For purposes of the removal, ATC made assumptions which significantly

8    reduced the amount in controversy calculations well below those ranges.  For

9    example, if Plaintiff worked over 40 hours a week, as she alleges (ECF No. 1-1, Ex. A

10   ¶ 12), she would have worked at least 24 hours off-the-clock in a single workweek,

11   which would yield damages under many of her claims.  With respect to *only* the

12   minimum wage claim, with 24 hours of off-the-clock work, Plaintiff alone would be

13   claiming an additional $586.80 per week.  Extrapolated to the number of workweeks

14   in the putative class, the total would be **$12,683,095** ($24.45 x 24 hours x 21,614

15   workweeks).  Thus, if ATC had stuck to Plaintiff's broad allegations, the range of the

16   amount in controversy would be much larger.  Reducing this assumption to just one

17   hour of overtime per workweek represents a 95% reduction on that claim alone.  The

18   chart below reflects a range of amounts in controversy using a plain reading of

19   Plaintiff's allegations.

20

| Claim | Low | Medium | High |
|---|---|---|---|
| **Meal Periods** (ATC based its assumption that there was at least one violation per workweek per putative class member on the allegation that | 1 violation per work week = **$528,413** ($24.45/hour x 21,612 weeks) | 2 violations per work week = **$1,056,826** ($24.45/hour x 21,612 x 2) | 5 violations per week = **$2,642,065** |

14

| | | | |
|---|---|---|---|
| violations took place more than once ("at times") during Plaintiff's two-week tenure with ATC.) | | | ($24.45/hour x 21,612 x 5)[4] |
| **Rest Periods** (Same assumptions and formula for the meal period claim) | **$528,413** | **$1,056,826** | **$2,642,065** |
| **Minimum Wage Claim** | 1 hour of unpaid work per workweek = **$528,413** ($24.45 x 1 hr x 21,614 workweeks) | 2 hour of unpaid work per workweek = **$1,056,826** ($24.45 x 2 hrs x 21,614 workweeks) | 5 hour of unpaid work per workweek = **$2,642,065** ($24.45 x 5 hrs x 21,614 workweeks) (Extrapolating Plaintiff's alleged 24 hours of unpaid work to the class totals over **$12 million**, as outlined above.) |

[4] Based on Plaintiff's allegations, there could have been violations on each of the seven days per week (ECF 1-1, Ex. A ¶12.), but ATC assumes a regular five-day workweek here.

| Overtime Claim (ATC originally used just 30 minutes of unpaid overtime it its assumptions, but given Plaintiff's claim in her Opposition to the Motion to Dismiss and the cases cited above, ATC uses 1 hour as the low end; a small fraction of the overtime violations alleged.) | 1 hour of unpaid overtime per workweek = **$264,339** ($24.45 x .5 (for the overtime rate) x 1 hr of unpaid overtime x 21,614 workweeks). | 2 hours of unpaid overtime workweek = **$528,678** ($24.45 x .5 (for the overtime rate) x 2 hrs of unpaid overtime x 21,614 workweeks). | 5 hours of unpaid overtime per workweek = **$1,321,696** ($24.45 x .5 (for the overtime rate) 5 hrs of unpaid overtime x 21,614 workweeks). |
|---|---|---|---|
| **Business Expenses Claim and Delayed Payment Claim[5]** | ? | ? | ? |
| **TOTALS** | **$1,849,578** | **$3,699,156** | **$9,247,891** |

The above chart shows the ranges for the amounts in controversy on the calculations for the claims which Plaintiff does not appear to dispute.  It does not include the **$6.3 million** in inaccurate wage statement claims ($1,596,150) and waiting time penalties ($4,702,373) described above.  It does not include *any* double time wages presumably due if Plaintiff's allegations regarding work on a seventh consecutive day are to be believed.  Plaintiff has provided no reasonable basis to reduce ATC's assumptions supporting the $6.3 million in wage statement and waiting

---

[5] Plaintiff's Complaint is so vague ATC is unable to assign a value to these claims.  Needless to say, any value would only increase the totals.

time penalties.  In reality, she provides no basis for using any of the low end figures above.  If she worked as she said she did without pay for *days* in a given workweek, more than one meal and rest period premium should be assumed for those weeks. Even if the Court relies on the low end of the assumptions presented above, the amount in controversy is well over $5 million when the inaccurate wage statement claim, waiting time penalty claim, and attorneys' fees claims are considered.  In short, there is no combination of the amounts in controversy that results in less than $5,000,000 based on Plaintiff's allegations.

### 3. ATC's Assignment of 25% Attorneys' Fees Is Reasonable.

The Ninth Circuit has long held that attorneys' fees awarded under fee-shifting statutes are included in the amount in controversy.  *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018).  "The defendant retains the burden, however, of proving the amount of future attorneys' fees by a preponderance of the evidence."  *Id.* at 788.  Here, there is no dispute that at least some of the California wage and hour laws that form the basis of Plaintiff's Complaint entitle a prevailing plaintiff to an award of attorneys' fees.  *See id.* (citing Cal. Labor Code §§ 218.5, 226, 1194).

ATC's Notice of Removal correctly noted that in the class action context, courts have found that 25% of the aggregate amount in controversy is a benchmark for attorneys' fees awards, and initially applied that percentage to the $7,751,695 amount in controversy, calculating $1,937,924 in attorney fees *could be* added to the amount in controversy.  (ECF No. 13 ¶¶ 58, 59.)  ATC *then* calculated that more than $1,000,000 in fees could result from just one of the claims, and explained that there were many ways to calculate the fee award but that any of these calculations meet and exceed the amount in controversy requirement together with the alleged damages.  *Id.* While the Ninth Circuit has not adopted a *per se* rule that the amount of attorneys' fees in controversy in class actions is 25% of all other alleged recovery, it has not held that "a percentage-based method is never relevant when estimating the amount of

DM2\17853557.14

17

attorneys' fees included in the amount in controversy." *Fritsch*, 899 F.3d at 796 n.6. Following *Fritsch*, courts commonly accept attorneys' fees of 25% of the amount-in-controversy for the underlying claims as part of their calculations.  *See, e.g., Ramirez*, 2022 WL 1210402, at *8 (agreeing with defendants' estimate of a 25% attorneys' fee recovery, and refusing to "zero-out" defendants' attorneys' fees calculations for the amount-in-controversy).

Plaintiff has not suggested that some lesser percentage is appropriate here. Indeed, Plaintiff's counsel routinely requests, and receives, attorney fees of 35% or "one third" of the settlement value in similar cases.  For example, in a 2021 motion for final approval of wage and hour class action settlement, Plaintiff's counsel sought, and received, one third of the settlement value of the case.  (Request for Judicial Notice in Support of Response In Opposition to Motion to Remand ("RJN"), Exhibit A at 19:26-20:2; Exhibit B ¶ 16.)  More recently, Plaintiff's counsel filed a motion requesting 35% of the Gross Settlement Amount, which they received.  (RJN, Exhibit C, 19:3-7 (request); Exhibit D ¶ 18 (order granting 35% attorney fee).)

Plaintiff's argument that ATC is attempting to "balloon" the amount in controversy is completely unfounded.  ATC applied the benchmark 25% of the aggregate amount in controversy, but also argued in the alternative that even cutting it nearly in half (in other words applying 25% to just one of the claims) could result in $1,000,000 in fees.  Plaintiff does not address this figure.  There is no reason to believe, nor does Plaintiff claim, that if Plaintiff prevails in this matter, her counsel will request less than 25% of the damages awarded or that the reduced estimated $1,000,000 fee award would be unreasonable in this context.

## B.    Plaintiff's Failure to Plead She Lacks an Adequate Remedy at Law Is Not Cause for Remand of the Entire Action.

Plaintiff's ninth cause of action alleges a claim for equitable remedies in the form of an injunction and restitution under the UCL.  (ECF No. 1-1, Exhibit A ¶¶ 92-95.)  Where a litigant seeks equitable relief under a state statute, like the UCL, federal

18

courts must apply federal common law requirements for equitable relief.  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 837 (9th Cir. 2020).  Federal common law requires a claim in equity to include an allegation that there is no adequate remedy at law, even where state law (including the UCL) abrogates such a requirement.  *Id.* at 844.

Here, Plaintiff admits she intentionally failed to plead that there is no adequate remedy at law in an attempt to avoid this court's jurisdiction.  (ECF No. 14 at 19:1-6.) Plaintiff argues the entire action – which includes eight causes of action seeking remedies at law under the California Labor Code, and a single derivative UCL claim seeking both an injunction and restitution for the same alleged violations – should be remanded.  Remand of the entire action, however, is not the appropriate remedy as this Court has subject matter jurisdiction under CAFA, and the Court's authority to hear this case does not depend on its equitable powers.  *See, e.g.*, *Kim v. Walmart, Inc.*, No. 2:22-CV-08380-SB-PVC, 2023 WL 196919, at *2-3 (C.D. Cal. Jan. 13, 2023) (denying motion to remand).

Under 28 U.S.C. § 1447(c), a district court may *not* remand a case in its entirety where there is subject matter jurisdiction over some portion of it.[6]  *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1002 (9th Cir. 2001) (noting Supreme Court precedent "makes clear that a district court may not under § 1447(c) remand a case in its entirety where there is subject matter jurisdiction over some portion of it"), superseded in part on other grounds by statute as stated in *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 n.10 (9th Cir. 2011).  The presence of at least *some claims* over which the district court has jurisdiction is sufficient to allow removal of an entire case, even if the other claims alleged are beyond the district court's power to decide.  *Id.* at 1002-

---

[6] 28 USC section 1447(c) provides in relevant part:

> (c) A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a).

DEFENDANT ATC HEALTHCARE SERVICES, LLC'S RESPONSE IN OPPOSITION TO
MOTION FOR ORDER REMANDING ACTION TO STATE COURT

03 (citation omitted); *see Lopez v. Cequel Commc'ns, LLC*, No. 20-cv-2242-TLN, 2021 WL 4476831, at *2 (E.D. Cal. Sept. 30, 2021) (denying remand, including a limited remand of equitable UCL and California's Consumers Legal Remedies Act ("CLRA") claims, where plaintiff argued that he did not plead an inadequate remedy at law as required); *Naseri v. Greenfield World Trade, Inc.*, No. SACV 21-01084-CJC, 2021 WL 3511040, at *1 (C.D. Cal. Aug. 10, 2021).

        Plaintiff ignores this law, despite bringing legal and equitable claims in her Complaint.  Even if the Court lacked jurisdiction over the UCL claim, lack of equitable jurisdiction over a single improperly pleaded claim is not a basis for remanding a case in its entirety.  *See, e.g., Travonne Hooks v. Dignity Health*, No. CV 22-7699-DSF, 2022 WL 17968833, at *2-3 (C.D. Cal. Dec. 27, 2022) (dismissing UCL claim for lack of equitable jurisdiction, but denying remand and retaining jurisdiction over the case); *Slick v. CableCom, LLC*, No. 22-cv-3415-JSC, 2022 WL 4181003, at *3-4 (N.D. Cal. Sept. 12, 2022) (same); *Lopez*, 2021 WL 4476831, at *2 ("[S]ince *Sonner*, district courts in the Ninth Circuit have repeatedly dismissed claims for equitable relief under Rule 12(b)(6), not based on a lack of jurisdiction.").  Moreover, "the question of equitable jurisdiction, [is] a question concerned, not with whether the claim falls within the limited jurisdiction conferred on the federal courts, but with whether consistently with the principles governing equitable relief the court may exercise its remedial powers."  *Schlesinger v. Councilman,* 420 U.S. 738, 754 (1975).

        Following *Sonner*, just two district courts have remanded an action based on lack of equitable jurisdiction, and they are readily distinguishable.  In *Guthrie v. Transamerica Life Ins. Co.*, 561 F. Supp. 3d 869, 871 (N.D. Cal. 2021) and *Clevenger v. Welch Foods Inc.*, No. SACV2300127CJCJDEX, 2023 WL 2390630, at *5 (C.D. Cal. Mar. 7, 2023), the plaintiffs sought a single remedy under a single statute – equitable restitution under the UCL.  *Guthrie,* 561 F. Supp. 3d at 872; *Clevenger,* 2023 WL 2390630, at *1.  This action, in contrast, pleads nine causes of action

20

seeking damages under the California Labor Code, and a derivative UCL claim seeking both equitable restitution and injunctive relief.  In *Mish v. TForce Freight, Inc.*, No. 21-CV-04094-EMC, 2021 WL 4592124, at *8 (N.D. Cal. Oct. 6, 2021), a Labor Code violations case analogous to this matter, the district court distinguished *Guthrie*:

> [I]n *Guthrie* the only cause of action was under the UCL, and therefore, the federal court's lack of equitable jurisdiction pursuant to *Sonner* left it without a case to decide at all.  *Guthrie*'s analysis is inapplicable to the circumstances here where Plaintiff's UCL claim is the seventh of seven claims, and is completely derivative of [Plaintiff's] Labor Code violations over which this Court does have jurisdiction.

*See also Treinish v. iFit Inc.*, No. CV 22-4687-DMG (SKX), 2022 WL 5027083, at *5 (C.D. Cal. Oct. 3, 2022) ("[T]he result in *Guthrie* did not flow from section 1447's remand authority for lack of subject matter jurisdiction. [] Instead, it points to case law allowing courts to remand when federal abstention doctrine would require them to stay or dismiss the case if filed in federal court originally. [] This is a key distinction from the instant case, in which there is valid CAFA jurisdiction.")

Here, there is valid CAFA jurisdiction.  There is no basis to remand the entire action.

## IV.   **CONCLUSION**

For the foregoing reasons, ATC respectfully requests that the court deny Plaintiff's Motion to Remand in its entirety.

///

///

///

///

///

///

1    Dated: May 24, 2023                    **DUANE MORRIS LLP**

2

3                                           By /s/ Shireen Y. Wetmore
                                               Gerald L. Maatman, Jr.
4                                              Jennifer A. Riley
                                               Shireen Y. Wetmore
5                                              Angelica Zabanal
                                               Lauren M. Case

6                                              Attorneys for Defendant,
                                               ATC HEALTHCARE SERVICES, LLC
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
     DM2\17853557.14                        22

─────────────────────────────────────────────────────────
       DEFENDANT ATC HEALTHCARE SERVICES, LLC'S RESPONSE IN OPPOSITION TO
                MOTION FOR ORDER REMANDING ACTION TO STATE COURT

## L.R. 11-6.2 Certificate of Compliance

The undersigned, counsel of record for ATC Healthcare Services, LLC, certifies that this brief contains 6765, words, which complies with the word limit of L.R. 11-6.1.

Dated: May 24, 2023                    **DUANE MORRIS** LLP

By *_/s/ Shireen Y. Wetmore_*
                                              Gerald L. Maatman, Jr.
                                              Jennifer A. Riley
                                              Shireen Y. Wetmore
                                              Angelica Zabanal