UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:23-cv-02802-MCS-JC | Date | August 14, 2023 |
| Title | *Turesa Wilcox v. Harbor UCLA Med. Ctr. Guild, Inc.* | | |

| Present: The Honorable | Mark C. Scarsi, United States District Judge |
|---|---|

| Stephen Montes Kerr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** (IN CHAMBERS) ORDER RE: MOTION TO REMAND AND MOTION TO DISMISS (ECF NOS. 13, 14)

Defendant ATC Healthcare Services, LLC moves to dismiss Plaintiff Turesa Wilcox's complaint. (MTD, ECF No. 13.) Wilcox opposes the motion, and ATC filed a reply. (MTD Opp'n, ECF No. 15; MTD Reply, ECF No. 18.) Also before the Court is a fully briefed motion to remand this action to the Los Angeles County Superior Court. (MTR, ECF No. 14; MTR Opp'n, ECF No. 20; MTR Reply, ECF No. 25.) The Court heard argument on July 10, 2023. (Mins., ECF No. 28.)

**I.   BACKGROUND**

According to Wilcox's complaint, Wilcox is a resident of California and a former employee of ATC and Defendant UCLA Harbor Medical Center Guild, Inc. (Compl. ¶ 2, ECF No. 1-1.) Wilcox alleges that UCLA Harbor outsourced labor and payroll services to ATC, a staffing agency. (*Id.* ¶ 3.) Without alleging relevant factual details, Wilcox alleges that she and putative class members suffered several workplace violations: (1) failure to pay overtime wages, (2) failure to pay minimum wages, (3) failure to provide meal periods, (4) failure to provide rest periods, (5) waiting time penalties, (6) wage statement violations, and (7) failure to reimburse. (*Id.* ¶¶ 32–90.) Wilcox also brings a derivative claim under the California

Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* (*Id.* ¶¶ 91–95.) Wilcox seeks to represent a putative class of "all current and former non-exempt employees of Defendants within the State of California at any time commencing four (4) years preceding the filing of Plaintiff's complaint up until the time that notice of the class action is provided to the class." (*Id.* ¶ 22.)

ATC removed this action on April 14, 2023, asserting that this Court holds subject-matter jurisdiction over Wilcox's class action claims under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2). (NOR ¶ 6, ECF No. 1.) According to ATC, the putative class is sufficiently large and diverse, and Wilcox's complaint places about $7,751,695 in controversy before attorney's fees. (*Id.* ¶¶ 7–56.)

In her motion to remand, Wilcox raises two primary arguments challenging the Court's subject-matter jurisdiction over this action. First, she contends that ATC has not proven that the amount in controversy exceeds the CAFA jurisdictional minimum of $5 million. (MTR 8–18.) Second, because legal remedies are adequate, Wilcox argues, the Court cannot exercise equitable jurisdiction over her UCL claim and thus must dismiss the entire action. (MTR 18–21.)

In its own motion, ATC seeks dismissal of Wilcox's claims "because her threadbare allegations amount to little more than a recitation of legal elements followed by a legal conclusion." (MTD 4.)

## II. MOTION TO REMAND

### A. Legal Standard

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A defendant may remove an action to federal court if the federal court could exercise original jurisdiction over the action. 28 U.S.C. § 1441(a). If a defendant fails to meet its burden of establishing subject-matter jurisdiction, the suit is remanded. 28 U.S.C. § 1447(c).

**B. Discussion**

1. Amount in Controversy

Wilcox argues that ATC fails to meet its burden of demonstrating, with summary judgment-type evidence, an amount in controversy exceeding the CAFA jurisdictional threshold of $5 million. (*See generally* MTR 8–18.) Specifically, she challenges ATC's damages estimates for her inaccurate wage statement and wages due at termination claims. (*Id.* at 11–17.) Additionally, Wilcox asserts that ATC has not proven that attorney's fees of 25% of total damages are warranted in this case. (*Id.* at 17–18.) Wilcox does not dispute ATC's estimated damages for claims of unpaid overtime wages, meal premiums, and rest period premiums. (MTR Opp'n 6–7; *see generally* MTR.)

A defendant may remove an action from state court to federal court if the plaintiff could have originally filed the action in federal court. *See* 28 U.S.C. § 1441(a). CAFA provides federal subject-matter jurisdiction if (1) the proposed plaintiff class is not less than 100 members, (2) the parties are minimally diverse, and (3) the aggregate amount in controversy exceeds $5 million. *Id.* § 1332(d)(2), (5)(B). "Congress intended CAFA to be interpreted expansively." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citing S. Rep. No. 109-14, at 42 (Feb. 28, 2005)). Although "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court," *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014), the removing party bears the burden of establishing federal jurisdiction, *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011) ("The burden of establishing removal jurisdiction, even in CAFA cases, lies with the defendant seeking removal.").

Where the amount in controversy is not apparent from the face of the complaint, the removing party is "required to show the amount in controversy by the preponderance of the evidence." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022); *see Abrego v. Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006). Generally, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," but where a plaintiff contests the amount in controversy put forth by the defendant, "[e]vidence establishing the amount is required . . . ." *Dart Cherokee Basin*, 574 U.S. at 89. The parties, thus, "may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the

amount in controversy at the time of removal.'" *Ibarra*, 775 F.3d at 1197 (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). "Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.*

The amount in controversy is not clear from the face of the complaint. Wilcox does not plead any specific amount in controversy and acknowledges in her motion that she "does not specify an amount of damages." (MTR 9; *see generally* Compl.) Having reviewed ATC's calculations, assumptions, and arguments, the Court determines that ATC has met its burden to show that the amount in controversy more likely than not exceeds $5 million.

        a.  *Undisputed Damages Estimates*

To start, the Court accepts ATC's damages estimate as to the unpaid overtime, meal, and rest period claims as Wilcox has failed to dispute them in opposition to the motion. ATC calculates those damages as follows: (1) $396,346 for the unpaid overtime and penalties; (2) $528,413 for the unpaid meal premiums; and (3) $528,413 for the unpaid rest period premiums. (NOR ¶¶ 30, 37, 43; *see generally* MTR Opp'n.) Accordingly, the Court begins its amount-in-controversy analysis with a baseline damages figure of $1,453,172.

        b.  *Inaccurate Wage Statement*

ATC estimates that $1,596,150 is in controversy for Wilcox's inaccurate wage statements claim. (*Id.* ¶ 52.) Under California Labor Code section 226(e)(1), an aggrieved employee is entitled to $50 "for the initial pay period in which a violation occurs and [$100] per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of [$4,000]," plus costs and reasonable attorney's fees. While it is unclear from the briefs how ATC arrived at its $1,596,150 figure, ATC represented at the hearing that not every employee had completed enough workweeks to accrue the maximum penalty of $4,000. Rather than assume $4,000 in damages for each of the 1,062 putative class members during the relevant period, (Gultz Decl. ¶ 4, ECF No. 20-2), ATC had taken employee data to estimate what its current and former employees might receive if each class member had an inaccurate wage statement claim. However, ATC has offered no summary-judgment-type evidence, and the Court will not simply accept counsel's unsupported conclusion that ATC properly calculated the employee data to arrive at $1,596,150 in damages for the inaccurate wage statement claim. Without such evidence or other competent

argument, the Court rejects ATC's estimate of $1,596,150 and finds, for purposes of this motion, that $0 are in controversy for the wage statement claim.

      c.    *Wages Due upon Termination*

As to the waiting time claim, Wilcox disputes ATC's calculation of $4,702,373 for unreasonably assuming that none of the 877 terminated or resigned employees during the relevant four-year period received the full wages owed upon termination. (MTR 15–16; NOR ¶ 48.) Under California Labor Code sections 201(a) and 202(a), discharged employees are generally entitled to receive all wages owed immediately on termination, while resigned employees generally receive payment within 72 hours. Where an employer fails to timely pay wages due upon termination, the aggrieved employee is entitled to waiting time penalties "from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203(a). ATC estimates the potential damages for this claim as follows: 877 former employees (potential class size) × 7.31 hours (Wilcox's average hours) × $24.45 (Wilcox's hourly rate) × 30 days (the maximum penalties allowed) = $4,702,373. (NOR ¶ 48.) Wilcox contends that because she only alleges that Defendants failed "at times to [timely] pay Plaintiff and Class Members, or some of them, the full amount of their wages owed to them," ATC cannot assume that every former employee will bring "derivative waiting time claims." (MTR 15–16 (cleaned up).)

First, the Court credits the declaration of Scott Gultz as probative of the potential size of the class. (Gultz Decl. ¶¶ 2–5.) Given his position at as ATC's chief information officer, Gultz has personal knowledge of the approximate size of the putative class and is likely familiar with the relevant facts supporting ATC's damages calculations. (*Id.* ¶ 2); *Arrow Elecs., Inc. v. Justus (In re Kaypro)*, 218 F.3d 1070, 1075 (9th Cir. 2000) ("Personal knowledge may be inferred from a declarant's position."); *see, e.g.*, *Tennison v. Hub Grp. Trucking, Inc.*, No. LA CV20-05076 JAK (SPx), 2020 WL 7714702, at *7 (C.D. Cal. Dec. 28, 2020) (denying motion to remand upon evidence provided by defense declarant who was "generally familiar with Defendants' operations at 30 facilities in California"); *Duberry v. J. Crew Grp., Inc.*, No. 2:14-cv-08810-SVW-MRW, 2015 WL 4575018, at *3–5 (C.D. Cal. July 28, 2015) (rejecting challenge to defense declaration supporting amount in controversy where declarant "demonstrated a general familiarity with the kind of data that was accessed from J. Crew's record keeping system to prepare the reports from which her declaration was generated, as well as how that information would have been accessed"). Further, Wilcox does not appear to dispute the figures in

Gultz's declaration, only their sufficiency to demonstrate the amount in controversy. (*See generally* MTR.) The Court applies Gultz's figures to analyze whether ATC was justified in assuming a 100% violation rate as to the waiting claim.

Wilcox objects to ATC's calculation as unreasonably assuming that all employees during the relevant period were entitled to maximum waiting time penalties. (MTR 15–17.) Wilcox faults ATC for failing to offer any "rationale (either in the body of the Complaint or in any extrinsic evidence) in support of its assumed 100% violation rate." (*Id.* at 15.) Wilcox explains that because she only alleges that the defendants violated the Labor Code "at times" or that only "some of" the class members suffered each of the violations, the complaint does not support an assumption of all class members suffering a derivative waiting time claim. (*Id.* at 15–16; *see also* Compl. ¶¶ 12–19.)

While such an argument may have support for her antecedent claims, Wilcox's argument makes little sense as to her derivative waiting time claim. Wilcox "seeks to represent a class of *all* current and former non-exempt employees of Defendants within the State of California at any time commencing four (4) years preceding the filing of [her] complaint up until the time that notice of the class action is provided to the class." (Compl. ¶ 22 (emphasis added).) Even if none of the putative class members suffered an antecedent workplace violation every pay period, each current and former employee need only suffer one of the alleged violations at any time during employment to bring a claim for failure to timely page wages upon termination. In other words, any failure to pay overtime, minimum wages, rest period premiums, meal premiums, or uniform reimbursements would result in all terminated or resigned employees not receiving all wages owed, assuming that Wilcox's waiting time claim is indeed derivative of her other Labor Code claims. And if an employee suffered no violations at any point during employment, that former worker would have no valid claims and fundamentally undermine the utility of the proposed class definition of "all current and former non-exempt employees." (Compl. ¶ 22.)

For the reasons stated above, the Gultz declaration is probative of the potential size of the class as to the waiting time claim. Further, the Court accepts ATC's use of Wilcox's hourly rate and average hours worked, given the proffers of Wilcox's paystubs for the two weeks worked. (Gultz Decl. Ex. A, ECF No. 20-2.) It is thus reasonable to assume that, using Wilcox's established rate and hours worked, 100% of former employees suffered derivative waiting time violations. *Salonga v. Aegis Senior Communities, LLC*, No. 22-cv-00525-LB, 2022 WL 1439914, at *4 (N.D.

Cal. May 6, 2022) ("[C]ourts . . . have accepted a 100-percent violation rate where the plaintiff has (1) tied waiting-time penalties to other claims and (2) the defendant specifically accounts for only terminated employees." (collecting cases)). Accordingly, the Court finds by a preponderance of the evidence that ATC has demonstrated estimated damages of $4,702,373 for the waiting time claim.

In sum, the Court finds that ATC has demonstrated an amount in controversy totaling at least $6,155,545 before attorney's fees, comfortably above CAFA's jurisdictional threshold. 28 U.S.C. § 1332(d)(2), (5)(B). Because the Court finds the pre-fee damages sufficient to establish subject-matter jurisdiction, the Court need not consider whether ATC has established attorney's fees equal to 25% of $6,155,545 are in controversy in this case.[1]

2. Equitable Jurisdiction

Wilcox urges the Court to remand the entire action based on the lack of subject-matter jurisdiction over her equitable UCL claim because there is an adequate remedy at law: damages for her Labor Code claims. (MTR 18–19.) According to Wilcox, the lack of federal jurisdiction over her UCL claim requires remand of the entire action to state court. (*Id.* at 20.)

Wilcox's position lacks legal support, as the Ninth Circuit "has held that the presence of at least some claims over which the district court has original jurisdiction is sufficient to allow removal of an entire case, even if others of the claims alleged are beyond the district court's power to decide." *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1002–03 (9th Cir. 2001). Even if equitable jurisdiction "is an independent bar to federal jurisdiction here separate from" subject-matter jurisdiction, (MTR Reply 9 (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020)), it does not follow that the lack of equitable jurisdiction over one claim merits remand of an entire action where there are eight claims antecedent to the derivative UCL claim. The cases resulting in a remand of the entire action are distinguishable because in those cases, the plaintiffs only brought claims for equitable relief, whereas Wilcox here brings eight legal claims under the Labor Code. *Compare Guthrie v. Transamerica Life Ins. Co.*, 561 F. Supp. 3d 869, 872 (N.D. Cal. 2021), *and Clevenger v. Welch Foods Inc.*, No. SACV 23-00127-CJC (JDEx), 2023 WL

---

[1] The Court also denies Defendant's request for judicial notice as unnecessary for the resolution of this motion. *See Japanese Vill., LLC v. Fed. Transit Admin.*, 843 F.3d 445, 454 (9th Cir. 2016).

2390630, at *1 (C.D. Cal. Mar. 7, 2023) (stating that the plaintiffs "filed the instant action in the Orange County Superior Court, seeking restitution and injunctive relief under the UCL"), *with* (Compl. ¶¶ 32–95). Further, the Court agrees with *Mish v. TForce Freight, Inc.*, where the court in the Northern District of California held that the proper course is to dismiss the UCL claim without prejudice and with leave to amend. No. 21-cv-04094-EMC, 2021 WL 4592124, at *8 n.2 (N.D. Cal. Oct. 6, 2021); *see also Travonne Hooks v. Dignity Health*, No. CV 22-07699 DSF (PDx), 2022 WL 17968833, at *3 (C.D. Cal Dec. 27, 2022) ("The Court finds . . . that dismissal [of the UCL claim] without prejudice is the proper resolution here.").

Wilcox also argues that the Court should exercise discretion in remanding the entire action to avoid a perpetual loop of refiling in state court, removal to federal court, and dismissal in this court. (MTR 21.) This argument also lacks merit. If the Court does not have original equitable jurisdiction over Wilcox's UCL claim—an assertion ATC does not appear to meaningfully contest, (MTR Opp'n 19–21)—ATC cannot again remove the claim in good faith. Either Wilcox must amend her UCL claim to fall within the Court's jurisdiction, or she must litigate her lone, equitable UCL claim in state court. Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colo. Riv. Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). The Court cannot evade this bedrock principle for the sake of efficiency. Accordingly, the Court declines to remand this action for want of equitable jurisdiction.

In sum, the Court finds that it holds subject-matter jurisdiction over Wilcox's Labor Code claims. Because neither party seeks to dismiss the UCL claim on jurisdictional grounds, the Court does not do so at this time. But as discussed in greater detail below, the UCL must be dismissed for failing to state a claim.

### III. MOTION TO DISMISS

#### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### B. Discussion

ATC asks the Court to apply the pleading standards announced in *Landers v. Quality Communications, Inc.*, 771 F.3d 638 (9th Cir. 2014) (requiring plaintiffs to allege a specific workweek where they suffered violations of the federal Fair Labor Standards Act), to most of Wilcox's claims and dismiss for insufficient specificity. (MTD 3–14.) As to her reimbursement claim, ATC contends that Wilcox's failure to allege ATC's knowing failure to reimburse a personal expenditure merits dismissal. (*Id.* at 14–15.) Finally, ATC argues that Wilcox's derivative UCL claim must fail because each of the antecedent claims on which it relies also fail. (*Id.* at 15–16.) The Court considers the merits of these arguments as to each of Wilcox's claims.

#### 1. Failure to Pay Overtime and Minimum Wages

Under California law, an employer must pay an employee at least the minimum wage for all hours worked. Cal. Lab. Code §§ 1194, 1197. Where an hourly employee works more than eight hours in one workday and forty hours in any workweek, the employee is owed overtime pay—one and a half times the ordinary rate of pay. Cal. Lab. Code § 510. To plead hourly and overtime wages claims, "a plaintiff asserting a claim to overtime payments must allege that she worked more than forty hours in a given workweek without being compensated for the overtime hours worked during that workweek." *Landers*, 771 F.3d at 644–45.[2] "A plaintiff

---

[2] While *Landers* involved hourly and overtime wages claims under the federal Fair Labor Standards Act ("FLSA"), 771 F.3d at 641–46, the Ninth Circuit has impliedly blessed its application to parallel claims under California state law, *Boyack v. Regis Corp.*, 812 F. App'x 428, 430–31 (9th Cir. 2020); *Carter v. Rasier-CA, LLC*, 724 F.

may establish a plausible claim by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, or any other facts that will permit the court to find plausibility." *Id.* at 645. While Rule 8 does not require an especially high degree of detail, "with the pleading of more specific facts, the closer the complaint moves toward plausibility." *Id.*

Wilcox's complaint falls short of federal pleading standards for her overtime wages claim. To support this claim, Wilcox brings boilerplate, conclusory allegations that she and putative class members,

> at times, worked for Defendants during shifts that consisted of more than eight (8) hours in a workday and/or more than forty hours in a workweek, and/or seven (7) consecutive workdays in a workweek, without being paid overtime wages for all hours worked as a result of . . . Defendants failing to accurately track and/or pay for all hours actually worked.

(Compl. ¶ 36.) Wilcox's allegations lack any factual details "estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, or any other facts that will permit the court to find plausibility." *Landers*, 771 F.3d at 645. The failure to allege such basic facts casts doubt on the plausibility of Wilcox's minimum wages claim. *Landers*, 771 F.3d at 645; *Carter v. Rasier-CA, LLC*, No. 17-cv-00003-HSG, 2017 WL 4098858, at *3 (N.D. Cal. Sept. 15, 2017) ("Plaintiff must also assert sufficient factual allegations about the hours . . . worked and [the] related compensation."), *aff'd*, 724 F. App'x 586, 587 (9th Cir. 2018). Thus, the first cause of action must be dismissed.

Wilcox's minimum wages claim suffers the same deficiencies as her overtime wages claim. She simply alleges that during the relevant period, "Defendants failed, at times, to accurately track and/or pay for all hours actually worked at their regular rate of pay that is above the minimum wage to the detriment of Plaintiff and Class Members." (Compl. ¶ 42.) These barebone allegations are little more than a recitation of the elements of a claim for unpaid minimum wages and must be dismissed for failing to offer any specific details as to the hours worked or the wages still owed. *Landers*, 771 F.3d at 645.

---

App'x 586, 587 (9th Cir. 2018) (affirming district court's application of *Landers* to the plaintiff's claims arising under state and federal law).

2. Failure to Provide Meal and Rest Periods

California law prohibits employers from requiring employees to work a "period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes," unless the total workday lasts six or fewer hours. Cal. Lab. Code § 512(a). Further, "[a]n employer shall not require an employee to work during a meal or rest or recovery period mandated pursuant to an applicable statute, or applicable regulation, standard, or order." *Id.* § 226.7(b). Any mandated rest period "shall be counted as hours worked, for which there shall be no deduction from wages." *Id.* § 226.7(d). Where "an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law," an employee is owed one additional hour's wages at the regular rate "for each workday that the meal or rest or recovery period is not provided." *Id.* § 226.7(c).

As a preliminary matter, the Court notes that while the Ninth Circuit in *Landers* considered only federal minimum and overtime wages claims, courts in this circuit have applied its reasoning to meal and rest period claims under state law. *See, e.g.*, *Reyna v. WestRock Co.*, No. 20-cv-01666-BLF, 2020 WL 5074390, at *7–8 (N.D. Cal. Aug. 24, 2020); *Guerrero v. Halliburton Energy Servs., Inc.*, No. 1:16-CV-1300-LJO-JLT, 2016 WL 6494296, at *5–6 (E.D. Cal. Nov. 2, 2016); *Byrd v. Masonite Corp.*, No. EDCV 16-35 JGB (KKx), 2016 WL 756523, at *3 (C.D. Cal. Feb. 25, 2016). This Court agrees with the established trend that *Landers* clarifies the federal pleading standards for meal and rest period claims. Accordingly, the Court applies *Landers* to Plaintiff's third and fourth causes of action.

Both the meal period and rest break claims are inadequately pleaded for the same reasons as Wilcox's first and second causes of action. Without elaborating further, Wilcox alleges that Defendants did "not provide[] complete, timely 30-minute, duty-free uninterrupted meal periods every five hours of work" or "complete, timely 10-minute, duty-free uninterrupted rest periods every four (4) hours of work." (Compl. ¶¶ 49, 57.) Again, Wilcox's failure to allege any specific workweek where she or a class member suffered a meal or rest period violation renders her allegations "so threadbare or speculative that they fail to cross the line between the conclusory and the factual." *Landers*, 771 F.3d at 642 (quoting *Pruell v. Caritas Christi*, 678 F.3d 10, 13 (1st Cir. 2012)). Thus, Wilcox's third and fourth claims are dismissed.

### 3. Failure to Timely Pay Wages Upon Termination

California Labor Code section 201(a) states that "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Where an employee without "a written contract for a definite period" resigns, "wages shall become due and payable not later than 72 hours thereafter." Cal. Lab. Code § 202(a). Employees who give 72 hours' notice of resignation are entitled to receive their final paychecks "at the time of quitting." *Id.* "If an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits," the employee is entitled to waiting time penalties. *Id.* § 203(a). To state a claim for failing to timely pay wages upon termination, courts in the circuit have required plaintiffs to allege when their "employment with Defendant ended," and "exactly what wages were earned and unpaid." *Guerrero*, 2016 WL 6494296, at *8; *see also, e.g.*, *Dutra v. J.R. Simplot Co.*, No. 2:21-cv-01054-TLN-CKD, 2023 WL 113846, at *6 (E.D. Cal. Jan. 5, 2023) (applying *Guerrero*); *Soratorio v. Tesoro Refin. & Mktg. Co., LLC*, No. CV 17-1554-MWF (RAOx), 2017 WL 1520416, at *7 (C.D. Cal. Apr. 26, 2017) (same).

Wilcox's waiting time claim are dismissed for two reasons. First, Wilcox fails to provide even a modicum of factual detail, such as the date of her termination, the wages earned, and the wages expected, (Compl. ¶ 64), which renders her factual allegations too sparse to satisfy Rule 8. *See Guerrero*, 2016 WL 6494296, at *8. Second, to the extent this claim is derivative of the insufficiently pleaded overtime wages claim, (Compl. ¶ 64), Wilcox's waiting time claim must also fail. Therefore, the fifth cause of action is dismissed.

### 4. Failure to Provide Accurate Wage Statements

Under California Labor Code section 226(a), an employer must furnish accurate itemized wage statements showing, inter alia, "(1) gross wages earned, (2) total hours worked by the employee, . . . (5) net wages earned, . . . and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee." To state a claim for failure to provide accurate wage statements, a plaintiff must plead factual allegations sufficient to raise a plausible inference that the employer knowingly and intentionally failed to include at least one of the required items of section 226(a), thereby causing injury. *See Brewer v. Gen. Nutrition Corp.*, No. 11–CV–3587 YGR, 2015 WL 5072039, at *5 (N.D. Cal. Aug. 27, 2015) (citing Cal. Lab. Code § 226(a), (e)). "[A] knowing and intentional failure must be more than an isolated and unintentional payroll error

due to a clerical or inadvertent mistake." *Willner v. Manpower, Inc.*, 35 F. Supp. 3d 1116, 1131 (N.D. Cal. 2014) (internal quotation marks omitted).

Wilcox's wage statement claim must also be dismissed for "fail[ing] to provide any factual allegations as to at least one specific wage statement that was deficient in the alleged ways." *Duley v. Centerra Grp., LLC*, No. 2:19-cv-08754-AB (JCx), 2020 WL 6526369, at *5 (C.D. Cal. Mar. 18, 2020). To support her claim, Wilcox alleges in conclusory fashion that "Defendants failed to comply with Labor Code section 226, subdivision (a) by adopting policies and practices that resulted in" the failure to provide accurate wage statements. (Compl. ¶ 72.) Even if she alleges that Defendants have a policy and practice of providing inaccurate wage statements, her Wilcox's allegations amount to little more than a parroting of the statutory requirements of a section 226 claim, *see Johnson v. Winco Foods, LLC*, No. ED CV 17-2288-DOC (SHKx), 2018 WL 6017012, at *18 (C.D. Cal. Apr. 2, 2018), as a policy of issuing inaccurate wage statements alone adds little meaningful clarity to the way in which Defendants allegedly violated section 226. Thus, Wilcox's sixth cause of action must be dismissed.[3]

### 5.  Failure to Timely Pay Wages During Employment

Under California Labor Code section 204(a), an employer is required to pay employees for work performed between the first and fifteenth of the month by the twenty-sixth of the same month. Work performed between the sixteenth and the last day of the month must be paid by the tenth of the following month. Cal. Lab. Code § 204(a). Temporary services employers, on the other hand, must pay their employees weekly. *Id.* § 201.3(b)(1). Employers are subject to statutory penalties for failure to timely pay employees' wages under either section 204 or 201.3. *Id.* § 210(a).

---

[3] While Wilcox admits in her motion to remand that her inaccurate wage statement claim is derivative of other Labor Code violations, (MTR 5, 12), it is not clear from the face of the complaint whether Wilcox's inaccurate wage statement claim stands independent of her other claims or is derivative thereof. However, the Court notes that "[a] plaintiff cannot state a claim for a wage statement violation that is completely derivative of their wage and hour claims" because such a claim "would provide an impermissible double recovery." *Ramirez v. HV Glob. Mgmt. Corp.*, No. 21-cv-09955-BLF, 2023 WL 322888, at *1 (N.D. Cal. Jan. 19, 2023) (internal quotation marks omitted). On amendment, Wilcox should be mindful that an inaccurate wage statement claim cannot be wholly derivative of her other claims.

Wilcox brings an untimely wages claim for "policies and practices that resulted in, at times, not paying Plaintiff and Class Members in accordance with Labor Code section 204." (Compl. ¶ 81.) Again, Wilcox's claim must be dismissed for failing to offer any "description of what wages were due, when they were due, and when, if at all, they were paid." *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d 1025, 1033 (C.D. Cal. 2017). Without such basic factual allegations, Wilcox's claim is little more than a threadbare recitation of the elements of a section 204 claim.[4]

6.  Failure to Reimburse Claim

Under California Labor Code section 2802(a), an employer must "indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer." "Merely alleging failure to reimburse unspecified work-related expenses is not enough to state a Section 2802 claim." *Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1005 (N.D. Cal. 2016) (collecting cases). To state a section 2802 claim for reimbursement, an employer "must either know or have reason to know that the employee has incurred an expense. Once the employer has such knowledge, then it has the duty to exercise due diligence and take any and all reasonable steps to ensure that the employee is paid for the expense." *Stuart v. RadioShack Corp.*, 641 F. Supp. 2d 901, 904 (N.D. Cal. 2009).

As to her section 2802 claim, Wilcox alleges that Defendants refused to reimburse her and putative class members for "purchasing mandatory work uniforms; and laundering mandatory work uniforms." (Compl. ¶¶ 87–88.) ATC again argues that Wilcox's failure to allege any specific facts supporting her claim renders her allegations insufficient to state a claim. (Mot. 14–15.) While a closer

---

[4] While not an issue either party has raised, "[t]here is nothing in section 204 or 210 that indicates, in clear understandable, unmistakable terms, that a private right of actions exists for violations of section 204." *Johnson v. Hewlett-Packard Co.*, 809 F. Supp. 2d 1114, 1136 (N.D. Cal. 2011) (internal quotation marks omitted); *accord Guerra v. United Nat. Foods, Inc.*, No. 19-cv-01684-BLF, 2019 WL 13203781, at *8 (N.D. Cal. Nov. 8, 2019). Wilcox does not style her claim for section 210 civil penalties as arising under the California Private Attorneys General Act, which might allow an otherwise well-pleaded section 204 claim to survive a Rule 12(b)(6) motion. Any amendment should also address this potential deficiency.

call, the Court agrees with ATC. While Wilcox does indicate that she and other class members "purchas[ed] mandatory work uniforms," (Compl. ¶ 87), she does not allege that she or anyone in the putative class ever "sought reimbursement, or whether or how Defendant[s] acquired knowledge that [they] knew or should have known" about any necessary expenditures. *Boian v. Schneider Logistics Transloading & Distrib., Inc.*, No. EDCV 20-109-MWF (AFMx), 2020 WL 5356707, at *10 (C.D. Cal. May 28, 2020). And as to the expense of laundering the required uniforms, Wilcox fails to allege that she or other class members paid for those services or whether they claimed any reimbursement. *Lopez v. Wendy's Int'l, Inc.*, No. EDCV 11–00275 VAP (OPx), 2011 WL 13224822, at *10 (C.D. Cal. May 17, 2011) (requiring a plaintiff to allege that "she paid for" necessary expenses). Without such basic factual details demonstrating Defendants' knowledge of employees' necessary expenditures and a subsequent refusal to exercise due diligence to ensure repayment, Wilcox's eighth cause of action must be dismissed.

7. <u>UCL Claim</u>

The UCL prohibits "unlawful, unfair or fraudulent business act[s] or practice[s]." Cal. Bus. & Prof. Code § 17200. "Each of these three adjectives captures a separate and distinct theory of liability." *Rubio v. Cap. One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (internal quotation marks omitted). A business practice can violate one or each of the three prongs. *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007). The UCL's coverage is "sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (internal quotation marks omitted).

Wilcox invokes the unlawful prong of the UCL. (Compl. ¶ 92 (alleging "unlawful business practices in violation of the Labor Code").) A UCL claim under the unlawful prong "borrows violations of other laws and treats" them as unlawful business practices "independently actionable under section 17200." *Farmers Ins. Exch. v. Superior Ct.*, 2 Cal. 4th 377, 383 (1992) (internal quotation marks omitted). Thus, to state a UCL claim, Plaintiff must plead a violation of another statute or common law. *Krantz v. BT Visual Images, L.L.C.*, 89 Cal. App. 4th 164, 178 (2001) (UCL claims "stand or fall depending on the fate of the antecedent substantive causes of action."). Because Wilcox's UCL claim is wholly derivative of her other claims,

all of which the Court has dismissed, the UCL claim is also dismissed.[5] *See Glenn K. Jackson Inc. v. Roe*, 273 F.3d 1192, 1203 (9th Cir. 2001) (citing *Cel-Tech*, 20 Cal. 4th at 182).

        8.    <u>Leave to Amend</u>

As a general rule, leave to amend a dismissed complaint should be freely granted unless it is clear the complaint could not be saved by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). "Courts may decline to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'" *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013) (alteration in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Given the Ninth Circuit's policy of granting leave to amend "with extreme liberality," *Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1102 (9th Cir. 2018) (internal quotation marks omitted), the Court grants Wilcox leave to amend each of her claims subject to the limitations identified above.

## IV.    CONCLUSION

The Court denies Wilcox's motion to remand and grants ATC's motion to dismiss. All claims against ATC are dismissed with leave to amend. On its own motion, the Court also dismisses with leave to amend the claims against Harbor UCLA. *See Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742–43 (9th Cir. 2008). Wilcox shall file an amended complaint within 14 days of this Order, provided she can do so without violating Federal Rule of Civil Procedure 11(b). Failure to timely amend will waive the right to do so. Leave to add new claims or parties must be sought by a properly noticed motion.

**IT IS SO ORDERED.**

---

[5] The Court also notes that if Wilcox prefers to pursue a UCL claim in this action, any amendment should address issues of equitable jurisdiction raised in her motion to remand.